UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARBARA STONE,

          Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.

          Case No. No. 13-13544

          District Judge John Corbett O'Meara

          Magistrate Judge R. Steven Whalen

_____/

**REPORT AND RECOMMENDATION**

Plaintiff Barbara Stone ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits under Title II of the Social Security Act. Parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED [Docket #12] and that Plaintiff's Motion for Summary Judgment be DENIED [Docket #9].

**I.  PROCEDURAL HISTORY**

Plaintiff applied for Disability Insurance Benefits ("DIB") on February 3, 2010, alleging disability as of February 15, 2009 (Tr. 114). Upon initial denial of the claim, Plaintiff requested an administrative hearing, held on October 5, 2011 in Flint, Michigan

before Administrative Law Judge ("ALJ") Regina Sobrino (Tr. 27). Plaintiff, represented by attorney Jeffrey Carl Atkin, testified, (Tr. 30-40), as did vocational expert ("VE") Timothy Lee Shaner (Tr. 41-47). On February 23, 2012, ALJ Sobrino found Plaintiff not disabled (Tr. 22-23).

On June 14, 2013, the Appeals Council declined to review the administrative decision (Tr. 1-3). Plaintiff filed suit in this Court on August 16, 2013.

## II. BACKGROUND FACTS

Plaintiff, born January 7, 1958, was 54 at the time of the administrative decision (Tr. 23, 114). She completed 12th grade and worked previously as a job setter (Tr. 139-140). She alleges disability as a result of back, hip, shoulder, neck, hand, and ankle conditions (Tr. 138).

### A. Plaintiff's Testimony

*Plaintiff's attorney prefaced his client's testimony by stating that she had returned to work without restrictions on July 22, 2011.*

Plaintiff then offered the following testimony:

She lived with her husband, mother, and adult son (Tr. 31). She did not work between February 15, 2009 and July 22, 2011 (Tr. 31). Since returning to work, she worked on an assembly line rotating between several different jobs (Tr. 32). She performed the job in a standing position, staying on her feet for up to two-and-a-half hours at a time, but noted that the job could be done from a sitting position (Tr. 32). She was not required to lift more than 10 pounds (Tr. 32). She experienced trouble standing and walking more than two-and-

a-half hours at a stretch (Tr. 33). She tried to walk a mile every day (Tr. 33). She did not require the use of a cane (Tr. 33). She was able to sit up to 30 minutes before requiring a break (Tr. 33). Due to symptoms of Carpal Tunnel Syndrome ("CTS"), she experienced difficulty writing for extended periods (Tr. 34). She experienced limitations in reaching with the right arm (Tr. 34). She did not experience left arm problems (Tr. 35). She had difficulty bending, noting that she attempted to stoop instead of bending (Tr. 35). She also experienced difficulty crouching (Tr. 35). Climbing stairs caused lower back pain (Tr. 35). She was able to cook, clean, and perform laundry chores but did not shop for groceries (Tr. 35-36). She rarely socialized with friends or extended family members (Tr. 36). She did not perform yard work but was able to drive (Tr. 36).

Plaintiff was currently prescribed Tramadol, Neurontin, Vicodin, and Motrin for pain (Tr. 37). The medication caused the side effects of drowsiness, constipation, and confusion (Tr. 37). She refrained from taking the prescribed medication because of the side effects (Tr. 39). She also experienced interrupted sleep (Tr. 37). She had not been hospitalized or sought emergency treatment since the alleged onset of disability date (Tr. 37-38). She noted that her treating physician had imposed functional restrictions, but her employer refused to accept the restrictions (Tr. 38). Her current job requirements caused shoulder and back pain and numbing and tingling of the hands (Tr. 38-39).

**B. Medical Records**

**1. Treating Records**

June, 2009 imaging studies showed "mild lumbar osteophytosis" (Tr. 298). An MRI of the lumbar spine showed degenerative changes and a disc bulge "without stenosis" at L4-5 (Tr. 299). In September, 2009, a physical therapy report states that Plaintiff experienced renewed back pain after walking on a treadmill (Tr. 263). The same month, neurologist Paul LaClair, M.D. noted Plaintiff's reports of pain upon extended sitting or standing (Tr. 173). Plaintiff reported that she had undergone 14 sessions of physical therapy (Tr. 173). She reported that she coped with leg pain by reclining (Tr. 173). Dr. LaClair advised Plaintiff to continue physical therapy and take Vicodin and Motrin as needed (Tr. 174).

The following month, Dr. LaClair noted that recent x-rays and an MRI showing degenerative changes and the absence of stenosis at L4-5 (Tr. 171). He observed "a pelvic obliquity with apparent leg length discrepancy" (Tr. 171). He recommended exercise before considering steroid injections (Tr. 171). He imposed a 10-pound maximum lifting and "no repetitive bending, stooping or twisting and [a] sit/stand option for the following three months (Tr. 171). In November, 2009, EMG and nerve conduction studies showed moderate CTS on the right and mild/moderate CTS on the left (Tr. 183). Dr. LaClair's notes from November, 2009 state that Plaintiff wanted to undergo carpal tunnel release (Tr. 181). Dr. LaClair stated that he concurred with Plaintiff's application for "total and permanent disability from her employer" (Tr. 181). The same month, Dr. LaClair completed a statement to be given to Plaintiff's employer, opining that she had a "poor" prognosis as a result of

hand and wrist numbness and weakness (Tr. 186). He noted that he had referred Plaintiff to a hand surgeon (Tr. 186). He opined that she was disabled from February 13, 2009 forward (Tr. 187).

The same month, hand surgeon A. W. Weiss, Jr., M.D. examined Plaintiff, noting that she had not undergone steroid injections for CTS (Tr. 190). He recorded Plaintiff's report of "numbness, tingling, prickling, burning and aching," worse on the right (Tr. 191). He recommended bilateral carpal tunnel release surgery (Tr. 262). Plaintiff underwent right carpel tunnel release in January, 2010 and left carpal tunnel release in March, 2010 (Tr. 192-193, 241-242, 267-268, 269-270). Dr. Weiss opined that "there is no way" Plaintiff could resume her work as a machine operator (Tr. 192). March, 2010 notes state that Plaintiff's wrists were "healing well" (Tr. 193). She was cleared to perform "normal activities" (Tr. 193). The following month, family physician Marvin A. Latchana noted Plaintiff's report that she had been off work because her employer could not "find a job for her" (Tr. 200). The same month, Dr. LaClair noted that Plaintiff was planning on returning to work in May and was currently involved in pool aerobics and walking (Tr. 209). He found that she was limited to lifting 10 pounds with no repetitive bending, stooping, or twisting and a sit/stand option (Tr. 209). In May, 2010, Plaintiff noticed "a little bit" of improvement since undergoing surgery, but reported continued pain in both hands (Tr. 249). Dr. LaClair prescribed Neurontin for neuropathic hand pain (Tr. 249).

Dr. LaClair's June, 2010 records state that Plaintiff experienced a recent "acute flare up" of low back pain (Tr. 208, 285). He noted that an MRI performed one year earlier

-5-

showed degenerative changes but the absence of "severe stenosis" (Tr. 208). He noted that Plaintiff declined to take Vicodin (Tr. 208). He prescribed a trial dose of Tramadol (Tr. 208). The following month, Plaintiff stated that she would consider steroid injections if her back condition did not resolve (Tr. 237). She continued to wear wrist splints at night (Tr. 248). A September, 2010 MRI of the right shoulder showed a "full thickness tear of the anterior attachment of the supraspinatus tendon" (Tr. 226, 276). The following month, Dr. LaClair recommended a surgical consult for the rotator cuff tear "followed by aggressive shoulder rehabilitation" (Tr. 235). Plaintiff reported that symptoms of CTS were "somewhat improved" since undergoing bilateral surgery (Tr. 246).

In January, 2011, Plaintiff told Dr. LaClair that she did not require further medical treatment for CTS (Tr. 309). She reported some continued neuropathic symptoms but noted that she obtained good results from prescribed medication (Tr. 309). Dr. LaClair's April, 2011 records state that Plaintiff received manipulation of the right shoulder "under anesthesia" the previous month (Tr. 281). He noted an improved range of shoulder motion (Tr. 281). Plaintiff stated that she believed that she would be called back to work soon and requested that Dr. LaClair impose hand and wrist restrictions (Tr. 308). She reported that her low back pain was stable (Tr. 281).

The same day, Dr. LaClair found that from April 21, 2011 to June 20, 2011, Plaintiff was limited to three pounds lifting with no repetitive reaching or above chest work on the right and a maximum of eight pounds on the left (Tr. 338). She was precluded from repetitive bending, stooping, and twisting (Tr. 338). Dr. LaClair also imposed a sit/stand

option (Tr. 338). Notes by Dr. LaClair's staff state that an MRI had not been authorized as a result of a previous independent medical examination (Tr. 323). July, 2011 EMG studies showed the presence of moderate CTS on the right and mild/moderate on the left (Tr. 306). In August, 2011, Dr. LaClair noted that Plaintiff experienced reduced symptoms of CTS since the 2010 carpel tunnel releases (Tr. 304). He recommended avoidance of "forceful or repetitive use of the hands or vibrating tools" (Tr. 304).

## 2. Non-Examining Evidence

In August, 2010, Neil A. Friedman, M.D. performed a consultative physical examination of Plaintiff on behalf of the SSA, finding a reduced range of Achilles tendon motion (Tr. 211). He observed a normal gait and ability to heel and toe walk (Tr. 212, 217). He found that "poor effort" interfered with testing of the upper extremities (Tr. 216). Plaintiff did not exhibit difficulty holding a pen or picking up a paper clip (Tr. 216). Dr. Friedman opined that Plaintiff was capable of full-time work with "no repetitive forceful gripping and no use of vibrating power tools." He found that she would require an unlimited sit/stand option (Tr. 217).

### C. Vocational Testimony

VE Shaner classified Plaintiff's past work as a job setter as exertionally light and skilled[1] (Tr. 41). He testified that the job did not have transferrable skills to other positions

---

[1]
20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50

(Tr. 41). He classified Plaintiff's current job as an assembler (as described by Plaintiff) as sedentary (due to the 10-pound lifting restriction and sit/stand option) and unskilled (Tr. 42). The ALJ then posed the following set of limitations to the VE, describing a hypothetical individual of Plaintiff's age, education, and work experience:

> [A]ssume someone who's limited to performing no more than light work . . . . with respect to lifting, carrying and pushing and pulling, all the objects weigh no more than 10 pounds frequently and no more than 20 pounds occasionally. The person should be able to use both hands to do those things, lifting and carrying, pushing and pulling. The work should not require climbing ladders or crawling; no more than occasional climbing stairs, stooping and crouching; there should be no forceful gripping or grasping required. The person should not have to use vibrating tools. There should be no repetitive gripping and grasping and I'm going to define that in terms of the time of the workday to no more than frequent handling or fingering, and also no more than frequent feeling. In addition to no vibrating tools, just no exposure to vibration (Tr. 44).

The VE found that the above limitations would preclude Plaintiff's past relevant work, but would allow the hypothetical individual to perform the light, unskilled work of a housekeeper (8,000); cashier (33,000); and usher (4,500) (Tr. 44). In response to a second hypothetical question, the VE testified that if the same individual were limited to occasional reaching with the right arm, the housekeeper position would be eliminated, but the individual could still perform the jobs of cashier and usher (Tr. 45). The VE testified that if the

---

pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

individual were limited to occasional reaching on the right and a sit/stand option, all exertionally light work would be eliminated (Tr. 45). However, if the original hypothetical were amended to include a sit/stand option and a preclusion on overhead reaching, the jobs of assembler and inspector would be available (Tr. 46). The VE stated that his testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 46-47).

### D. The ALJ's Decision

Citing the medical records, ALJ Sobrino found that Plaintiff experienced the severe impairments of "carpal tunnel syndrome, degenerative joint disease, and degenerative disc disease" but that the conditions did not meet or equal a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13). The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") for light work with the following additional restrictions:

> [N]o ladder climbing; no crawling; occasional stair climbing, stooping and crouching; should be able to use both hands to lift, carry, push and pull; no forceful gripping or grasping; no vibrating tools; no repetitive gripping or grasping; frequent handling, fingering, feeling; no reaching above shoulder level; and no more than frequent reaching in other directions with right (dominant) arm (Tr. 13).

Citing the VE's testimony, the ALJ determined that while Plaintiff was unable to perform her past relevant work, she could perform the exertionally light work of a cashier or usher (Tr. 23).

The ALJ discounted the allegations of disability, citing Dr. Friedman's examination observations of a normal gait and the ability to squat and arise without difficulty (Tr. 17). The ALJ noted Plaintiff's testimony that she could stand for two-and-a-half hours before requiring a break (Tr. 21). The ALJ observed that at the time of the hearing, Plaintiff was currently performing light exertional work full time[2] (Tr. 21).

### III.    STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less than a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401,

---

[2]

The VE testified that Plaintiff's current job would fall into the *sedentary* category, due to the weight restriction of 10 pounds and the sit/stand option (Tr. 42). However, the ALJ did not err in finding that Plaintiff was performing the job at the light exertional level (Tr. 21). First, the fact that Plaintiff did not lift more than 10 pounds in the new job does not automatically place the position in the light category. In performing light work, "the weight lifted may be very little," so long as a "good deal of walking or standing" is involved. § 404.1567(b). *See Billotti v. Commissioner of Social Sec.,* 2014 WL 2615401, *8 ( E.D.Mich. June 12, 2014)("it is not a given that [a] five-pound lifting restriction . . . automatically implies a limitation to sedentary work").

Further, while Plaintiff testified that the job *could* be performed in a sitting position, she indicated that she performed the job in a standing position (with customary breaks) for her entire work shift (Tr. 32). Because Plaintiff's job, as performed, involves walking or standing for at least six hours a day, it falls into the light category. In any case, the exertional category of the work following the alleged closed period of disability is irrelevant, considering that the ALJ found at Step Five that Plaintiff could perform a significant range of other work (Tr. 22-23).

91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV.    FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at

step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V. ANALYSIS

### The Credibility Determination

Plaintiff argues that the hypothetical question to the VE did not account for her full degree of impairment. *Plaintiff's Brief* at 6-15, *Docket #9.* She contends that the omission of critical limitations from the hypothetical question invalidates the VE's job testimony forming the basis of the non-disability determination. *Id.* at 6-7 (citing *Felisky v. Bowen,* 35 F.3d 1027 (6th Cir. 1994)).[3]

---

[3]

Plaintiff's brief also includes a recitation of Sixth Circuit case law and the regulations pertaining to the deference accorded the opinion of a treating medical source. *Plaintiff's Brief* at 12-15. She is correct that the failure to provide a reasoned explanation for rejecting a treating physician's opinion constitutes reversible error. *Gayheart v. CSS*, 710 F.3d 365, 376 (6th Cir.2013); *Wilson v. CSS,* 378 F.3d 541, 544-546 (6th Cir.2004)(citing § 404.1527(c)(2)). Nonetheless, she has not identified an error in the ALJ's discussion and partial rejection of Dr. LaClair's findings.

Further, upon independent review, I conclude that the ALJ's treating physician analysis was well reasoned and supported. The ALJ acknowledged Dr. LaClair's April, 2011 finding that Plaintiff was unable to lift more than 10 pounds, but noted that severely restrictive lifting limitations were not supported by Dr. LaClair's treating records or the transcript as a whole (Tr. 21, 338). She found that the "diagnostic test results, clinical findings, treatment history, and level of activities reported" did not support the need for a sit/stand option, despite Dr. Friedman's recommendation, noting that Plaintiff was currently able to remain in a standing position for her entire work shift (Tr. 21). I agree that the fairly unremarkable imaging studies, combined with Plaintiff's admitted ability to stand for two-and-a-half hours at a stretch as of July 22, 2011 undermine the finding that she required sit/stand option between February 15, 2009 and July 21, 2011 (Tr. 114). The ALJ adopted other portions of Dr. LaClair's April, 2011 opinion by crafting an RFC restricting Plaintiff to "no forceful griping or grasping; no vibrating tools; no repetitive gripping or grasping" as

Plaintiff does not identify any specific deficiencies in the hypothetical question. Instead, she argues that critical omissions in the hypothetical question stem from the ALJ's erroneous credibility determination. *Id.* at 6-12. She cites her testimony that she was limited to walking and standing for only two-and-a-half hours and sit for only 30 minutes. *Id.* at 10 (citing Tr. 33). She argues, in effect that the ALJ did not credit her claim that she experienced hand numbness after writing "too long" (Tr. 34). She notes that she testified to difficulty bending and climbing stairs (Tr. 35). She argues that her testimony is supported by the treatment records showing the presence of CTS and a rotator cuff tear. *Id.* at 11-12.

While Plaintiff contends that the hypothetical question did not reflect limitations as a result of her conditions, she appears to argue that the ALJ erred by failing to credit her hearing testimony regarding her limitations. The question of whether the ALJ erred by omitting Plaintiff's professed limitations from the hypothetical question depends on whether the credibility determination was supported by substantial evidence.

Pursuant to SSR 96-7p, the credibility determination describes a two-step process for evaluating symptoms. "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186,*2 (July 2, 1996). The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the

---

well as "no reaching above shoulder level" and "no more than frequent reaching in other directions" with the right arm (Tr. 13)

intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record." *Id.* [4]

The ALJ's credibility determination, and by extension the choice of hypothetical limitations, is well articulated and well supported by the medical records. While Plaintiff argues that the ALJ erroneously rejected her claims, the RFC incorporates many of the professed manipulative and postural limitations. Plaintiff's testimony that as of July 22, 2011, she was able to stand or walk her entire work shift (with customary breaks) supports the RFC for exertionally light work. (Tr. 13); 20 C.F.R. § 404.1567. Plaintiff argues that the ALJ placed inordinate focus on her functional abilities upon returning to work rather than the alleged closed period of disability. However, her treatment during the closed period (carpal tunnel release surgery and intermittent lower back issues) do not support her claim that she was incapable of light work for a minimum of 12 months. While she contends that the ALJ

---

[4]In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

-14-

did not credit the claims of hand numbness and pain, the hand restrictions contained in the RFC, precluding forceful gripping or grasping; no vibrating tools; no repetitive gripping or grasping," and limitations on handling, fingering, feeling and reaching appear to be drawn from both her testimony and Dr. LaClair's April and August, 2011 assessments (Tr. 304, 338). The ALJ's finding that Plaintiff was precluded from all ladder climbing and crawling and limited to occasional stair climbing, stooping, and crouching (Tr. 13) adequately addresses the allegations of postural limitations (Tr. 13, 35). Likewise, the ALJ acknowledged the limitations as a result of a rotator cuff tear by precluding all overhead reaching and no more than frequent reaching in other directions (Tr. 13).

The determination is also well support to the extent that the ALJ did not credit Plaintiff's alleged degree of limitation. The ALJ noted that Plaintiff exhibited a normal gait and did not require the use of a cane (Tr. 21, 217). She cited Dr. Friedman's observation that Plaintiff was able to arise from a sitting position without difficulty (Tr. 21, 212-217). While Plaintiff faults the ALJ for citing her current ability to work in support of the non-disability determination, the records do not show that Plaintiff experienced a dramatic improvement in the months prior to the July, 2011 return to work. Further, Dr. LaClair's April, 2011 treating notes suggest that Plaintiff's return to work was not precipitated by an improvement in her condition but rather, because she was "called back" to work (Tr. 308). Because the ALJ's rationale for the inclusion of certain limitations in the hypothetical question (and the omission of others) was well supported, she was not required to include the rejected claims in the question to the VE or the RFC found in the administrative decision. *See Stanley v. Secretary*

*of Health and Human Services,* 39 F.3d 115, 118-119 (6th Cir.1994)(ALJ not obliged to include properly discredited allegations of limitation).

My recommendation to uphold the Commissioner's decision should not be read to trivialize Plaintiff's physical conditions. However, the ALJ's determination that she was capable of performing a significant range of light work was comfortably within the "zone of choice" accorded to the fact-finder at the administrative hearing level. As such, it should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## VI.   CONCLUSION

I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: August 21, 2014

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on August 21, 2014, electronically and/or by U.S. Mail.

s/Holly A. Monda for Carolyn M. Ciesla
Case Manager to the
Honorable R. Steven Whalen
